IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FARM CREDIT SERVICES OF NORTH DAKOTA PCA, | CV 17–117–BLG–DWM |
| Plaintiff/Counter-Defendant, | |
| vs. | OPINION and ORDER |
| A & C SOARING EAGLE TRUCKING and CLINTON R. MULLIN, JR., | |
| Defendants/Counterclaimants. | |

In 2017, Plaintiff Farm Credit Services of North Dakota PCA ("Farm Credit") filed this foreclosure action against Defendants A & C Soaring Eagle Trucking ("A & C") and Clinton R. Mullin, Jr. ("Mullin") (collectively "Defendants"), alleging Defendants defaulted on promissory notes and that it is entitled to judgment and foreclosure on its security interests. (Doc. 1.) Defendants counterclaim, alleging fraud and constructive fraud, violation of the duty of confidentiality, breach of the duty of good faith and fair dealing, and deceit.[1] (Doc. 65.) Farm Credit seeks summary judgment on all claims and counterclaims. (Doc.

_____

[1] Though Farm Credit filed an answer to Defendants' First Amended Answer and Counterclaim, (*see* Docs. 20, 23), it did not answer the most recent pleading that added an affirmative defense based on 12 U.S.C. § 2202a, (*see* Doc. 65 at 6).

1

77.)  That motion is granted in part and denied in part as outlined below.

## BACKGROUND

The facts are undisputed unless otherwise noted.  (*See* Docs. 31, 37, 64, 76, 79, 82.)  Disputed facts are viewed in the light most favorable to Defendants. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

## I.    Factual Background

A & C was incorporated in 1993 and is located in Lambert, Montana.  (Doc. 37-5 at 1.)  Mullin is the President of A & C but has no ownership interest in the corporation.  (SDF, Doc. 82 at addt'l ¶ 1.)

**The Notes.**  This case involves four promissory notes:

|  | No. | Issue Date | Principal Amt. | Payment Type |
|---|---|---|---|---|
| Note A (A & C) | 129981440 | March 7, 2016 | $1,125,000.00 | Installment Payments |
| Note B (A & C) | 1298861600 | January 20, 2016 | $250,000.00 | Maturity Date of March 1, 2017 |
| Note C (Mullin) | 1267870200 | March 7, 2016 | $250,000.00 | Maturity Date of March 1, 2017 |
| Note D (Mullin) | 1299816500 | March 7, 2016 | $687,000.00 | Installment Payments |

(SUF, Doc. 79 at ¶¶ 1–8.)  Farm Credit insists that Defendants are in default under the terms of each note.  (*Id.* at ¶¶ 2, 4, 6, 8.)

**The Security Agreements.**  To secure their obligations, Defendants entered into a series of four security agreements.  (Doc. 79 at ¶ 9.)  These agreements granted Farm Credit a security interest in, *inter alia*, all equipment, motor vehicles,

fixtures, crops, general intangibles, accounts, inventory, and agricultural chemicals and supplies. (*Id.* at ¶¶ 10–12.) Farm Credit also perfected its security interest in five vehicles. (*Id.* at ¶ 13.)

**The Guaranties.** In April 2013, A & C executed and delivered a Continuing Guaranty Agreement ("Guaranty A") to guaranty payment of Mullin's debt under Notes C and D. (*Id.* at ¶ 14.) In February 2014, Mullin executed and delivered a Continuing Guaranty Agreement ("Guaranty B") to guaranty payment of A & C's debts under Notes A and B. (*Id.* at ¶ 15.)

Farm Credit is the owner and holder of the Notes, Security Agreements, and Guaranties (collectively "Loan Documents"). (*Id.* at ¶ 16.) According to Farm Credit, as of April 24, 2020, Defendants owed:

| Note | Current Principal Balance | Interest as of Apr. 24, 2020 | Interest Per Day | Late Charges as of Apr. 24, 2020 |
|------|---------------------------|------------------------------|------------------|----------------------------------|
| A | $1,125,000.00 | $139,028.49 | $96.387 | $55,059.77 |
| B | $248,717.96 | $41,129.12 | $45.996 | - - |
| C | $110,720.90 | $14,778.17 | $12.134 | - - |
| D | $678,000.00 | $71,723.94 | $40.486 | $25,857.81 |

(*Id.* at ¶¶ 17–20.) Those debts result in the cumulative amounts of:

a. principal sum of $2,162,438.86;

b. accrued and unpaid interest of $266,659.72;

3

c.     accrued and unpaid late charges of $80,917.58;

for a total amount of $2,510,016.16. (*Id.* at ¶ 21.) Defendants dispute both the

default and the amount owed, primarily on the grounds that Farm Credit

misapplied prior payments, wrongfully declared default, caused additional interest

and expenses, and improperly added attorney's fees. (Doc. 82 at ¶¶ 17–21.)

According to Defendants, Mullin spoke to Tom Lippert of Farm Credit in

November 2016 about refinancing because of declining crop prices. (*Id.* at ¶ 28,

addt'l ¶ 2.) Mullin did not fill out an application because in previous years he

would simply speak to Lippert who would then get back to him with the necessary

documents. (*Id.* at addt'l ¶ 2.) In December 2016, Mullin contacted Lippert again

to see if they had made any headway, and Lippert told him that while there was no

problem restructuring, the Minot office was behind on its work. (*Id.* at addt'l ¶ 3.)

Lippert told Mullin the same thing again in January 2017. (*Id.*) In February 2017,

Mullin tried to get the restructure finalized because his payments to Farm Credit

were due in March. (*Id.* at addt'l ¶ 4.) Lippert restated that Minot did not have the

time to work on it but that the existing loans had a 30-day grace period before they

became late and he intended to have something by then. (*Id.*)

On February 13, 2017, Mullin applied for and was preliminarily approved

for funds from Popular Ag Finance, a different lender, to pay both his and A & C's

obligations to Farm Credit. (*Id.* at addt'l ¶ 5.) When Mullin told Lippert about it,

4

Lippert assured him that Farm Credit would restructure as it had the year before. (*Id.*)  As a result, Mullin stopped pursuing the Popular Ag Finance loan and turned it down.  (*Id.*)  In March 2017, Mullin called Lippert about the restructure and Lippert assured him that they were still working on it.  (*Id.* at addt'l ¶ 6.)  On March 31, Mullin's banker traveled to Minot to meet with Farm Credit and was told the same thing.  (*Id.* at addt'l ¶ 7.)

In the early April 2017, Lippert called Mullin and told him that if he paid down $250,000, Farm Credit would get Defendants the operating monies and restructure.  (*Id.* at addt'l ¶ 8.)  Lippert stated that in order to get the monies, Farm Credit would release three liens it held on A & C's wheat and lentils, amounting to $250,000, so that A & C could secure a loan from the Department of Agriculture ("USDA") using its crops at collateral.  (*Id.*)  Once paid, Farm Credit would loan Defendants additional money to operate and restructure long term, over 25 years, using Mullin's Montana land as collateral.  (*Id.*)  Mullin understood the interest rate for the restructure and operating line of credit would be the same as past years. (*Id.*)  On April 21, 2017, A & C obtained a loan and paid Farm Credit $250,000, and Lippert told Mullin that he would have the loan documents for the restructure within the first part of the following week.  (*Id.* at addt'l ¶ 9.)

In the first week of May 2017, Mullin called Lippert and Lippert assured him restructuring was going to happen.  (*Id.* at addt'l ¶ 10.)  Mullin told Lippert he

was concerned about default and Lippert assured him that he would restructure by the end of the 30-day grace period and if not, Farm Credit would not apply any charges or late fees. (*Id.*) On May 9, 2017, Lippert called Mullin and told him Farm Credit would like to come to the farm in Enid, Montana to do an inspection. (*Id.* at addt'l ¶ 12.) The inspection occurred on May 15, and Farm Credit said it would get something put together to restructure. (*Id.*) On May 22 or 23, Farm Credit requested a current balance sheet and loss-profit statement, which Mullin provided. (*Id.* at addt'l ¶ 13.) On May 30, 2017, Farm Credit contacted Mullin and told him that its attorney, Richard Olson, advised not to loan any more money due to an unrelated judgment that had been rendered against Mullin in April 2017. (*Id.* at addt'l ¶ 14.) Mullin met with Farm Credit representatives on June 27, 2017, in an unsuccessful attempt to work things out. (*Id.* at addt'l ¶¶ 15, 16.) At that same meeting, Mullin learned for the first time that Lippert had never submitted an application for restructuring or operating credit. (*Id.* at addt'l ¶ 15.)

## II.    Procedural History

This action was originally filed in August 2017, (Doc. 1), followed by cross-motions for summary judgment, (*see* Docs. 28, 47). Oral argument was heard on the motions in June 2018, (*see* Doc. 52), but before a dispositional order was entered, the case was stayed in July 2018 when Mullin filed for bankruptcy, (Docs. 61, 67). That stay was lifted in December 2019 after the bankruptcy was

6

dismissed.  (Doc. 71.)  The present motion for summary judgment was filed on

May 26, 2020.  (Doc. 77.)  The case is set for trial October 26, 2020.  (Doc. 76.)

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is warranted where

the documentary evidence produced by the parties permits only one conclusion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Only disputes over

facts that might affect the outcome of the lawsuit will preclude entry of summary

judgment; factual disputes that are irrelevant or unnecessary to the outcome are not

considered.  *Id.* at 248.

## ANALYSIS

## I.    Applicable Law

The Loan Documents specify that they "shall be governed by and construed

in accordance with the substantive laws of the state in which Lender's office

originating this Loan is located (without reference to conflict of law principles)."

(*See, e.g.*, Doc. 1-4 at 7.)  Farm Credit has a principal office in Minot, North

Dakota, (Doc. 1, at ¶ 1), and the loans at issue originated in that office, (*see, e.g.*,

Doc. 1-4 at 2).  The parties' chosen law is therefore the law of North Dakota.

Because that choice does not "violate Montana public policy," North Dakota law

controls. *Masters Grp. Int'l, Inc. v. Comerica Bank*, 352 P.3d 1101, 1113 (Mont. 2015); *Ticknor v. Choice Hotels, Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).

## II.     Summary Judgment

Farm Credit seeks summary judgment on four issues related to its foreclosure complaint: (i) default on the Notes; (ii) the amount owed; (iii) its security interest; and (iv) Defendants' obligations under the guaranties. Defendants do not contest (iii) and (iv).  (*See* Doc. 35 at 8–9; Doc. 81 at 9.) Defendants persuasively argue, however, that disputed questions of fact prevent summary adjudication of default and the amount owed.  Farm Credit also requests summary judgment on all of Defendants' counterclaims.  Genuine factual disputes also prevent summary disposition of those claims.

### A.     Default

Farm Credit insists that Defendants are in default for failing to pay the amounts due under the Notes.  Though Defendants do not contest the nonpayment, they argue that Farm Credit's oral promise to restructure was a valid and enforceable contract and that, under that contract, nonpayment would not result in default.  Because Defendants raise a genuine dispute of material fact as to this issue, summary judgment is not appropriate.

#### 1.     Existence of an Oral Contract

"To be valid and enforceable, . . . a contract must be reasonably definite and

8

certain in its terms so that a court may require it to be performed.  It must spell out the obligations of each of the parties with reasonable definiteness.  Indefiniteness as to any essential element of the agreement may prevent the creation of an enforceable contract." *Union St. Bank v. Woell*, 434 N.W.2d 712, 717 (N.D. 1989) (quoting *Lohse v. Atl. Richfield Co.*, 389 N.W.2d 352, 355 (N.D. 1986)) (internal citations omitted) (alteration in original).  Accordingly,

> [e]ssential terms of an oral contract to continue lending money in the future include the amount and duration of the loans, interest rates, and, where appropriate, the methods of repayment and collateral for the loans, if any.  Taken alone, the absence of any one of these terms may not be of great significance; however, viewed collectively, their absence is fatal to the existence of a binding contract.

*Id.* (internal citations omitted).

Two cases out of the North Dakota Supreme Court provide guideposts for when evidence is sufficient to show an oral agreement, *Delzer v. United Bank of Bismarck*, 459 N.W.2d 752 (N.D. 1990), and when it is not, *Woell*, 434 N.W.2d 712.  In *Woell*, the Court found that the individual failed to show the existence of an oral agreement where he was able to show the bank loaned him some funds but "pointed to nothing in the record that would support even a reasonable inference that the Bank agreed to lend him in the future a specific amount of money over a specified period at a specified interest to be repaid under specified terms." *Id.* at 717.  In *Delzer*, on the other hand, the Court found evidence sufficient to support an oral agreement where the plaintiffs presented evidence of a specific line of

9

credit amount over a specified term regarding specific collateral.  459 N.W.2d at

758.  And while the interest rate was not established, "the interest rate of the

alleged line of credit could have reasonably been inferred from [the bank]'s

prevailing lending rate in the farming and ranching sector."  *Id.*

Here, Defendants "have pointed to sufficient evidence in the record that

would support a reasonable inference as to nearly all of the terms of the alleged

agreement."  *Id.*  Defendants contend that Farm Credit agreed that it would loan

them "an additional operating line of credit and restructure [their] current debts

with [Farm Credit], to be paid over 25 year period with land in Montana as

collateral."  (Doc. 82 at addt'l ¶ 11.)  Defendants believed the same interest rate

would apply.  (*Id.* at addt'l ¶ 8.)  Essentially, "[Farm Credit] would continue to do

what [it] had in years prior, which was to restructure the debts and provide an

additional operating line of credit, after [Mullin] took out a . . . loan and paid down

the $250,000.00."  (*Id.* at ¶ 11.)  In support of their position, Defendants present

the following evidence:

    (1)    Farm Credit similarly restructured Defendants' debt in 2016, (*see*

        Doc. 37-5 (application), Doc. 37-6 (approval emails));

    (2)    Lippert requested balance sheets from Defendants in January 2017,

        (*see* Doc. 37-9(emails));

    (2)    Farm Credit executed lien waivers on Defendants' crops in March

2017, (*see* Docs. 37-3, 37-4);

(3)     Defendants received a loan and paid Farm Credit $250,000 in April

         2017, (*see* Doc. 37-8 (check); Doc. 37-7 (USDA loan documents);

(4)     Farm Credit requested balance sheets from Mullin and performed an

         inspection even though he was past the deadline for payments of

         March 2017, (*see* Mullin Aff., Doc. 36 at ¶¶ 12, 13); and

(5)     The May 30, 2017 denial email from Bob Dawes to Lippert indicates

         the "Loan[] Denied" was an operating line of credit in the amount of

         $150,000, (*see* Doc. 37-10).

While the only other evidence is statements from Mullin as to the agreed upon

terms of the restructure, (*see* Mullin Aff., Doc. 36 at ¶ 8), Defendants have raised a

genuine dispute of fact as to the existence of an oral agreement to restructure and

extend Defendants' operating line of credit. *See Bloomquist v. Goose River Bank*,

836 N.W.2d 450, 452 (N.D. 2013) (assuming mutual consent and oral agreement at

summary judgment stage given the evidence presented by the borrower).

### 2.     Statute of Frauds

         That is not the end of the inquiry, however, as that dispute may not be

material if the contract is barred by North Dakota's statute of frauds.  Pursuant to

that provision, a writing is required for "[a]n agreement that by its terms is not to

be performed within a year from the making thereof," "[a]n agreement or promise

for the lending of money or the extension of credit in an aggregate amount of twenty-five thousand dollars or greater," or "[a]n agreement or promise to alter the terms of repayment or forgiveness of a debt that is in an aggregate amount of twenty-five thousand dollars or greater." N.D.C.C. § 9–06–04(1), (4) and (5).[2] There is no dispute that the agreement at issue here falls under one, if not all three, of these provisions. But Defendants insist an exception exists, either through Farm Credit's fraud or Defendants' partial performance. The former is persuasive.

### a.      Fraud

Defendants first argue that Farm Credit fraudulently represented that it would restructure Defendants' debts and that Defendants relied upon those misrepresentations to their detriment. "When a contract which is required by law to be in writing is prevented from being put into writing by the fraud of a party thereto, any other party who by such fraud is led to believe that it is in writing and acts upon such belief to that party's prejudice may enforce it against the fraudulent party." N.D.C.C. § 9–06–03. In order for Farm Credit to be estopped from raising a statute of frauds defense, Defendants must establish the existence of an oral contract, *Lohse*, 389 N.W.2d at 355, and present "evidence upon which [a] jury could . . . f[in]d fraud, positive misrepresentation, or unconscionable conduct akin

---

[2] The line of credit at issue in *Delzer* predated the Legislature's 1985 adoption of § 9-06-04(4) and (5). *Bloomquist*, 836 N.W. 2d at 453 n.1.

12

to fraud," *Farmers Co-op Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, 811

(N.D. 1976).  Such estoppel "does not arise merely because an oral contract within

the statute has been acted upon by the promisee and not performed by the

promisor, nor does it arise upon the mere refusal to make a writing as agreed." *Id.*

As discussed above, Defendants have presented sufficient evidence of an

oral contract to survive summary judgment.  Farm Credit insists, however, that

there is no evidence that it prevented an agreement from being reduced to writing.

However, construing the facts in favor of Defendants, the record could support a

finding of fraud or misrepresentation.  Mullin was told for over six months that

Farm Credit would restructure his loans and provide further operating credit, that

everything was fine with his account, and that the Minot office was merely "behind

[o]n their work" or "did not have time to work on it."  (Mullin Aff., Doc. 36 at ¶¶

3, 4, 11.)  When Mullin was preliminary pre-approved for funds from Popular Ag

Finance, Lippert asked him "why are you so nervous?"  (*Id.* at ¶ 5.)  These

statements were made to Mullin even though internal Farm Credit emails from

November 2016 indicate concerns with the account.  (*See* Doc. 37-13 ("I see

potential for significant issues to develop if we don't help [Lippert] stay on top of

this.").)  While the record could also support a finding that Farm Credit's decision

to deny the restructure was related to an April 2017 judgment entered against

Mullin, (*see* Doc. 37-12), Farm Credit requested balance sheets and performed an

inspection as late as May 2017, (Doc. 36 at ¶¶ 12, 13).  Summary adjudication of this issue is not appropriate.

### b.   Part Performance

Defendants further argue that the statute of frauds should not apply because they have partially performed.  This argument fails as a matter of law.  "Part performance of an oral contract may render the statute of frauds inapplicable as a defense."  *Cooke v. Blood Sys., Inc.*, 320 N.W.2d 124, 129 (N.D. 1982).[3]  "[T]he doctrine of part performance require[s] proof of the existence, terms and character of the contract by evidence which [i]s clear and unequivocal and that performance necessary to take the oral contract out of the statute of frauds must be consistent only with the existence of the contract."  *Id.*  This standard is not met if "the acts relied upon as constituting part performance . . . point to some other relationship or may be accounted for on some other hypothesis."  *Bloomquist*, 836 N.W.2d at 454 (alteration and internal quotation marks omitted).  Accordingly, "prevailing on a

---

[3]  Generally, contracts that cannot be performed within one year are not removed from the statute of frauds by partial performance. *Thompson v. N.D. Workers' Comp. Bureau*, 490 N.W.2d 248, 252 n.3 (N.D. 1992).  "However, that general rule is subject to an exception for cases involving real estate." *Id.*  The North Dakota Supreme Court has previously raised, but not decided, the question of "whether the partial performance doctrine applies to any oral contract which does not involve real estate." *See Bloomquist*, 836 N.W.2d at 454; *Rickert v. Dakota Sanitation Plus, Inc.*, 812 N.W.2d 413, 419 (N.D. 2012); *Thompson*, 490 N.W.2d at 252 n.3.  The Court avoided the question in all three cases by concluding the showing of partial performance was insufficient.  Such is the case here.

claim of partial performance sufficient to remove an oral contract from the statute of frauds is no easy task." *Knorr v. Norberg*, 844 N.W.2d 919, 923 (N.D. 2014).

Defendants allege that they partially performed their obligations by seeking out, receiving, and paying to Farm Credit $250,000. Defendants emphasize they were only able to secure the loan because of Farm Credit's release of certain liens on Defendants' crops. (*See* Docs. 37-3, 37-4.) Construing the facts in favor of Defendants, these acts are consistent with the existence of the alleged oral agreement. However, they are not consistent *only* with the existence of the alleged oral agreement. Defendants' acts would also be consistent with a scenario where they sought to pay down A & C's debt to Farm Credit in order to unburden collateral, (*see* Doc. 37-12 at 1 (Mullin email indicating Farm Credit's refusal to release equipment is interfering with his ability to sell assets to free up other income)), or simply to pay back Farm Credit under the current loan terms. While "[t]he existence of an oral contract and the conduct of partial performance of the contract are questions of fact," *Knorr*, 844 N.W.2d at 922, Defendants fail to show performance that could not be "accounted for on some other hypothesis," *Bloomquist*, 836 N.W.2d at 454.

**B.    Amount Owed**

Defendants further allege a factual dispute as to the amount owed under the Loan Documents. Farm Credit is correct that this type of debt is generally an

amount certain.[4]  But Defendants have raised questions regarding mitigation and Farm Credit's alleged misapplication of the $250,000 payment.  (*See, e.g.*, Doc. 37-12.)  Both issues potentially affect interest and penalties.  Farm Credit argues, however, that because Defendants did not challenge the amounts owed in the bankruptcy proceeding, it cannot do so here.  (Doc. 78 at 12.)  Farm Credit does not provide any legal explanation for why Defendants are limited in such a manner.  *See also* Fed. R. Evid. 408.

## C.    Affirmative Defenses

Defendants also raise several affirmative defenses.  Because genuine factual disputes exist as to Farm Credit's claims, the Court need not address these further issues.  However, having raised it at the prior hearing, the Court will address Defendants' reliance on 12 U.S.C. § 2202a.  Pursuant to § 2202a,

> On a determination by a qualified lender that a loan made by the lender is or has become a distressed loan, the lender shall provide written notice to the borrower that the loan may be suitable for restructuring, and include with such notice—
>
> (A) a copy of the policy of the lender established under subsection (g) that governs the treatment of distressed loans; and
>
> (B) all materials necessary to enable the borrower to submit an application for restructuring on the loan.

---

[4] Farm Credit originally sought attorneys' fees but has since conceded that such relief is not permitted under North Dakota law.  *See* N.D.C.C. § 28–26–04.

16

§ 2202a(b)(1).  That notice must be provided 45 days before the lender begins

foreclosure proceedings, § 2202a(b)(2), and the lender cannot pursue foreclosure

proceedings "before the lender has completed any pending consideration of the

loan for restructuring under this section," § 2202a(b)(3).  Upon receipt of an

application, the lender must determine "whether the cost to the lender of

restructuring the loan is equal to or less than the cost of foreclosure."

§ 2202a(d)(1)(A).  And, if so, the "lender shall restructure the loan in accordance

with the plan."  § 2202a(e)(1).

Farm Credit insists it complied with the provisions of § 2202a by sending

Defendants borrowers' rights packages on June 6, 2017 that were never returned.

(Doc. 79 at ¶ 36; *see* Doc. 53-3.)  Defendants do not dispute these facts, (*see* Doc.

82), but allege that Farm Credit failed to compare the potential costs of foreclosure

with the costs of restructuring as required by § 2202a(e)(1).  However, the

obligation to calculate the cost differential is only triggered if the lender "receives

an application for restructuring from a borrower."  § 2202a(d)(1).  No such

application was received here.  Defendants argue that Farm Credit was obligated to

consider restructuring "regardless of whether Defendants submitted an application

or plan to restructure," citing § 2202a(d)(2).  (Doc. 81 at 26–27.)  That subsection,

however, merely provides that lenders *may* propose a restructuring plan in the

absence of an application from the borrower.  It does not mandate *sua sponte*

restructuring on the lender's part.

There is another fact that weighs in Defendants' favor, however, though it is not dispositive. Mullin met with Farm Credit on June 27, 2017, "to try and work something out." (Doc. 82 at addt'l ¶ 15.) It was the first time Mullin learned that Lippert "had never ever put in an application to restructure" despite Mullin's requests to do so since November 2016. (*Id.* at addt'l ¶¶ 2, 15.) But even so, the borrowers' rights package gave Defendants until July 24, 2017 to submit a written application. (*See* Doc. 53-3 at 1.) They did not do so even after learning that no application had previously been submitted. Thus, § 2202a does not bar foreclosure here. *See Fed. Lank Bank of St. Paul v. Asbridge*, 474 N.W.2d 490, 494 (N.D. 1991) ("Since the [borrowers] themselves failed to submit a restructuring plan in keeping with the applicable criteria, they were not denied a fair opportunity to restructure.").

### D.   Counterclaims

Defendants allege four counterclaims: fraud and constructive fraud (Count I); violation of the duty of confidentiality (Count II); breach of the duty of good faith and fair dealing (Count III); and deceit (Count IV). (Doc. 65.) Genuine factual disputes also prevent summary disposition of these claims.

### 1.   Fraud

Under North Dakota law, "[a] tort action for fraud requires a contract

between the parties; a misrepresentation of facts, suppression of facts, misleading

another, or promising without an intent to perform; reliance on the false misleading

representation; and proof of actual damages proximately caused by the

misrepresentation or nondisclosure." *Northstar Founders, LLC v. Hayden Capital*

*USA, LLC*, 855 N.W.2d 614, 626 (N.D. 2014). "Actual fraud requires proof of

intent to deceive." *Anderson v. Zimbelman*, 842 N.W.2d 852, 857 (N.D. 2014).

As mentioned above, there is a genuine factual dispute as to whether there

was a valid and enforceable contract. A similar dispute exists regarding Farm

Credit's representations. Defendants contend that Farm Credit engaged in fraud

when it represented it would extend the Notes that were maturing and give

Defendants an operating line of credit so long as Defendants paid $250,000. (Doc.

65 at 8.) Defendants further contend that they relied on these representations in

borrowing $250,000 from a third party and deciding not to pursue additional

financing to pay off their other Farm Credit debts. (*Id.*) In response, Farm Credit

argues that "at no point did [it] promise, guarantee, or otherwise assure Mr. Mullin

that it would extend the maturity dates of the Notes or extend additional credit"

based on the payment of $250,000. (Doc. 78 at 15.) Rather, Farm Credit insists

that it informed Defendants that the Notes had to be brought current and it needed

to see current financials before extending the maturity date or advancing additional

funds. (Doc. 79 at ¶ 30; Doc. 50 at ¶ 6.)

The record on this issue is mixed.  (*Compare* Doc. 50 (Lippert Aff.) *with* Docs. 36, 63 (Mullin Aff.).)  There is a November 2016 internal Farm Credit email from Bob Daws, Farm Credit's Loan Asset Manager, to Lippert regarding Daws' concern with Defendants' accounts.  (*See* Doc. 37-13.)  That email recommends that Lippert, *inter alia*, "[g]ather a new balance sheet" and follow up with Defendants on how they plan to manage expense and income going forward.  (*Id.* at 2.)  It then appears Lippert sent Mullin a balance sheet to be filled out on January 12, 2017.  (*See* Doc. 37-9.)  However, there is also evidence that Mullin made the $250,000 payment with the expectation that he would get additional funding.  Lippert's own internal account file includes an entry stating: "[o]nce these funds are brought in, we will look at extensions of loans or a restructure." (Doc. 50 at 5.)

And, Farm Credit's legal arguments are not dispositive.  First, agreeing to new loan terms contingent upon a future event is not the same as an unactionable "prediction[] with respect to future events."  *Sperle v. Weigel*, 130 N.W.2d 315, 320 (N.D. 1964) (finding promise of future rental income on commercial real estate sale not actionable).  Second, Farm Credit argues that Defendants were already required to pay their operating lines as of March 1, 2017.  "It is well settled a claim of fraud or deceit will not lie for a misrepresentation which merely induced the party to do something he was already legally or contractually obligated to do."

*See First St. Bank v. Moen Enters.*, 529 N.W.2d 887, 892 (N.D. 1995).  However, Defendants dispute that a $250,000 lump sum payment would have been required under the existing loan terms and Farm Credit's argument does not address the fact that Defendants also turned down alternative funding.

Ultimately, there is a genuine dispute of material fact whether Farm Credit misrepresented, misled or promised something that it never intended to deliver. Summary judgment is not appropriate on this claim.

### 2.    Constructive Fraud

Constructive fraud consists

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under that person, by misleading another to the other's prejudice or to the prejudice of anyone claiming under the other; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud.

N.D.C.C. § 9–03–09.  A claim for constructive fraud thus generally requires a breach of a duty arising out of a fiduciary or confidential relationship.  *Asleson v. W. Branch Land Co.*, 311 N.W.2d 533, 539 (N.D. 1981).  Neither "[o]ne's implicit faith in another's honesty and integrity," *id.* at 539–40, nor a debtor-creditor relationship, *Woell*, 434 N.W. 2d at 721, ordinarily create such a duty.  But "a fiduciary relationship may arise under circumstances, which reflect a borrower's reposing of faith, confidence and trust in a bank with a resulting domination,

21

control or influence exercised by the bank over the borrower's affairs.

Furthermore, the borrower or party reposing the confidence must be in a position

of inequality, dependence, weakness, or lack of knowledge." *Id.* (internal citation

omitted). The existence of a fiduciary relationship is a question of fact which is

dependent upon a showing of "special circumstances" as outlined above. *First*

*Nat'l Bank & Tr. Co. v. Brakken*, 468 N.W.2d 633, 637 (N.D. 1991).

Defendants rely on *American Bank Center v. Wiest*, 793 N.W.2d 172 (N.D.

2010), to argue the existence of a fiduciary relationship here. In *Wiest*, the Court

affirmed the district court's finding of special circumstances giving rise to a

fiduciary duty where the bank induced the borrower to enter into loan transactions

by suggesting and asserting untrue facts, suppressing facts they were bound to

disclose, and making promises without any intention of performing. *Id.* at 183–84.

Defendants argue this case is similar in that Farm Credit knew Mullin was actively

pursuing a restructuring of his loans and additional operating funds and had given

up alternative financing yet assured him that his request would be approved.

The history of dealings between Defendants and Farm Credit indicates

Defendants put a lot of "faith, confidence and trust" in Farm Credit, that in turn led

to Farm Credit exercising a certain level of "domination, control or influence . . .

over [Defendants'] affairs." *Woell*, 434 N.W.2d at 721. That same history,

however, indicates that Defendants are neither weak nor ignorant when it comes to

22

agricultural loans or credit lines. *Id.* But even with this experience and knowledge, the record shows that Mullin was fully dependent upon what Lippert told him regarding his restructuring request and took direct actions based on what he was told. Construing the facts in favor of Defendants, a genuine dispute exists as to whether there were special circumstances to give rise to a fiduciary duty. Summary judgment is therefore not appropriate on this claim.

### 3.   Duty of Confidentiality

Defendants further allege that Farm Credit violated its duty of confidentiality when it, through attorney Richard Olson, disclosed confidential loan information to a third party in unrelated litigation. (*See* Doc. 37-14.) Subject to limited exception, a financial institution may not disclose customer information to a third party. N.D.C.C. § 6–08.1–03. Farm Credit does not dispute that the information was shared, but rather argues that Olson represented a different legal entity, "Farm Credit Services of North Dakota, FLCA," at the time. (Doc. 78 at 23.) Farm Credit insists that conduct cannot therefore be imputed to it. But Farm Credit presents no evidence diminishing its relationship with Olson. To the contrary, the only evidence in the record is that Olson specifically gave the order not to loan additional funds to Defendants, (Doc. 82 at addt'l ¶ 14), and had direct access to Defendants' records and loan sheet, (*see* Doc. 37-14 at 2). Because Farm Credit has failed to carry its initial summary judgment burden, this claim survives.

### 4.   Duty of Good Faith and Fair Dealing

A claim for the violation of the duty of good faith and fair dealing requires a duty either owed under the Uniform Commercial Code (UCC) or contract between the parties. *Woell*, 434 N.W.2d at 716. As discussed above, Defendants have raised a genuine dispute as to the existence of an oral, enforceable contract. Summary judgment is therefore not appropriate on this claim.

### 5.   Deceit

Finally, Defendants pled deceit in the alternative to fraud. *Erickson*, 747 N.W.2d at 44 ("[U]nder the statutory definitions for deceit and fraud, the same conduct, a promise made without any intention of performing, may constitute both deceit and fraud."). "A promise made without any intention of performing is a deceit . . . ." *St. Bank of Kenmare v. Lindberg*, 471 N.W.2d 470, 474 (N.D. 1991). Farm Credit argues that "Defendants present no facts to support their allegation that [Farm Credit] made . . . promises without any intention of performing." (Doc. 78 at 22.) Farm Credit relies on authority providing that there is no inference that a bank promised to make a loan simply because loan negotiations occurred. *See Lindberg*, 471 N.W.2d at 474 ("If any inference could be drawn from such negotiations it is that the Bank originally hoped to provide future financial assistance but was unable to do so when the course of events rendered the . . . loan economically unfeasible."). But Farm Credit's conduct here goes beyond a

24

standard, failed loan negotiation.  The parties have a long history and pattern of extending credit and restructuring loans based on the largely informal interactions between Mullin and Lippert.  And, there is evidence that, despite the continued reassurance Lippert provided, Farm Credit had concerns about continuing to provide funds to Defendants as early as November 2016.  (*See* Doc. 37-13.)  This claim survives summary judgment.

### CONCLUSION

For the reasons discussed above, IT IS ORDERED that Farm Credit's motion for summary judgment (Doc. 77) is GRANTED as to its claims for its (iii) security interests and Defendants' (iv) guarantor obligations; it is DENIED in all other respects.

DATED this ___8__ day of July, 2020.

Donald W. Molloy, District Judge
United States District Court

25